**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CASE NO. 8:12-cv-01195-PJM** |
| | * | |
| **DOE 1,** | * | |
| | * | |
| **Defendant.** | * | |

**PLAINTIFF'S REPLY TO RESPONSE TO PLAINTIFF'S MOTION TO
DISMISS** <u>**DEFENDANT'S COUNTERCLAIM [CM/ECF 31]**</u>

Plaintiff, Malibu Media, LLC, pursuant to Fed. R. Civ. P. 12(b)(6), by and through

undersigned counsel, hereby files its Reply to the Response to Plaintiff's Motion to Dismiss

Defendant's Counterclaim [CM/ECF 31] (the "Response") filed by Defendant, John Doe 1

("Defendant"), and states:

I.    <u>INTRODUCTION</u>

Defendant's Response fails to address the reasons why each counterclaim fails to state a

claim upon which relief can be granted.   As explained in Plaintiff's Motion to Dismiss

Defendant/Counter-Plaintiff Doe 1's Counterclaim [CM/ECF 29] ("Motion to Dismiss") and as

further supported herein, each of Defendant's counterclaims fails on its face.   First, Defendant

failed to plead that Plaintiff performed any action in this suit which is improper in support of his

count for abuse of process.   To the contrary, Plaintiff is using the process of the underlying

copyright infringement lawsuit against Defendant for its intended purpose; namely, to seek

redress for the injury caused by Defendant's infringement of Plaintiff's copyrights.   Under such

circumstances, the law makes clear that there is no abuse of process.   Next, Defendant's count

for intentional infliction of emotional distress is barred – as a matter of well-known black letter

law – by the *absolute* *privilege* afforded to litigants to speak during a civil proceeding without the possibility of incurring liability based upon that party's communications during the proceedings.   For that reason alone, Defendant's count for intentional infliction of emotional distress should be dismissed.   The count also fails to plead conduct that is outrageous, meaning outside the bounds of all decency, and so should be dismissed on that basis as well.   Finally, Defendant's claim for fraud on the copyright office cannot survive as a standalone count and is based entirely upon false assertions of fact.   Further, this Court recently granted a similar motion to dismiss which, although based upon different grounds, contained similar underlying facts and allegations.   *See Malibu Media, LLC v. Doe 1*, 2012 WL 6681990 (D. Md. 2012).   For the foregoing reasons, as explained more fully herein, this Court should dismiss Defendant John Doe 1's counterclaims.

## II.   ARGUMENT

### A. Legal Standard

"A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint." *Malibu Media, LLC v. Doe 1*, 2012 WL 6681990 (D. Md. 2012) (*citing Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.2006)).   "At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999)." *Id.*   However, allegations pled as legal conclusions are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 677.   Further, the complaint should

"contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Defendant Fails to State a Claim for Abuse of Process

As stated in Plaintiff's Motion to Dismiss, to state a claim for abuse of process, Defendant/Counter-Plaintiff must show three elements: "first, that the defendant willfully used process after it has issued in a manner not contemplated by law ... second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *Wallace v. Mercantile County Bank*, 514 F. Supp. 2d 776, 793 (D. Md. 2007) aff'd, 307 F. App'x 720 (4th Cir. 2009). Abuse of process lies where a party invokes legal proceedings not for their intended purpose, but in an effort "to accomplish an ulterior purpose for which it was not designed." *Resolution Trust Corp. v. Hecht*, 1993 WL 330721 (D. Md. 19930 (quoting W. Page Keeton, *et al., Prosser and Keeton on Torts* § 121 (5th ed. 1984))."

Here, all of Plaintiff's actions have been used in a manner contemplated by law and confined to their regular and legitimate functions in relation to the cause of action stated in the Complaint. To explain, after this Court severed all Defendants except Doe 1, Plaintiff obtained Defendant's identity, who was Doe 1, in response to a lawfully issued subpoena. Plaintiff received leave to issue the subpoena because Plaintiff pled a prima facie case of copyright infringement supported by a declaration from its investigator demonstrating that the subscriber's IP address committed the infringement. Thereafter, Plaintiff filed the Amended Complaint in this action and served Defendant. None of these actions are irregular or illegitimate. There is no action for abuse of process when "the defendants . . . did nothing more than pursue the lawsuit to its authorized conclusion[.]" *Wallace*, 514 F. Supp. 2d at 793.

Further, Defendant's assertion that Plaintiff's offer to settle constitutes an abuse of process fails for two reasons: (1) an out-of-court settlement offer is not a "process" within the meaning of the tort[1]; and (2) settlement offers are not only proper but encouraged.   "Attempting settlement falls within the scope of pursuing a lawsuit to its authorized conclusion; indeed, settlement is strongly encouraged under . . . Maryland . . . law."  *Wallace*, 514 F. Supp. 2d at 793 (citing *Rothman v. Fillette*, 503 Pa. 259 (1983) ("[t]here is a strong judicial policy in favor of parties voluntarily settling lawsuits")) (internal citations omitted).  *See also* the Supreme Court's statement that "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits."  *Marek v. Chesny*, 473 U.S. 1, 11 (1985).   "Upon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective. Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice."  *AF Holdings LLC v. Does 1-1,058*, 83 Fed. R. Serv. 3d 10 at *17 (D.D.C. 2012).

## 1. Defendant's Joinder Argument Cannot Support a Claim for Abuse of <u>Process</u>

Here, the only allegation about a legal "process" that defendant alleges is improper is Plaintiff's use of Rule 20's permissive joinder rule to save filing fees in filing the original complaint.  This allegation cannot support a claim for abuse of process, however, where, as here, this Court held that joinder is improper and severed all defendants except Doe 1.

For the foregoing reasons, Defendant's count for abuse of process should be dismissed.

---

[1] A "process" is the filing of the Complaint, propounding discovery, or some action taken in the actual proceeding itself.

**C. Defendant's Count for Intentional Infliction of Emotional Distress is Barred <u>by the Litigation Privilege</u>**

Defendant's Intentional Infliction of Emotional Distress count is barred by the litigation privilege. "It is well settled in Maryland that statements made by counsel and by parties in the course of 'judicial proceedings' are privileged so long as such statements are material and pertinent to the questions involved, irrespective of the motive with which they are made." *Kerpelman v. Bricker*, 23 Md. App. 628, 629, (Md. Ct. Spec. App. 1974). "The privilege extends . . . to statements that serve to initiate a judicial proceeding." *Offen v. Brenner*, 553 F. Supp. 2d 565, 569 (D. Md. 2008) <u>aff'd</u>, 334 Fed. Appx. 578 (4th Cir. 2009). "Maryland law dictates that some legal harms must be allowed to go uncompensated in order to further important public policies." *Id.* at 571. "A party to a civil litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." *Restatement 2d of Torts § 587.*

Here, Defendant's count is barred by the litigation privilege because "[c]learly the filing of the complaint in this case initiated a judicial proceeding[.]" *Kerpelman*, 23 Md. App. at 630. Defendant's count is entirely and expressly founded upon communications to the Court in the Complaint. Here, Defendant cannot assert that Plaintiff has done anything other than sue him for copyright infringement because Plaintiff has not done anything else. Because these statements were made in Plaintiff's Complaint, which was used to initiate this judicial proceeding, such statements are subject to the litigation privilege and cannot support a claim for intentional infliction of emotional distress.

### 1.  Defendant Has Failed to State a Claim for Intentional Infliction of <u>Emotional Distress</u>

Even if Defendant's claim for intentional infliction of emotional distress was not barred by the litigation privilege, Defendant has failed to state a claim because he has failed to allege all of the necessary elements.   To establish a claim of extreme and outrageous conduct, or intentional infliction of emotional distress, Defendant/Counter-Plaintiff must allege that: "(1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 465-66 (D. Md. 2002).   "[I]n Maryland, the tort of intentional infliction of emotional distress is rarely viable." *Id.* (internal quotations omitted) (<u>citing</u> <u>Farasat v. Paulikas</u>, 32 F. Supp. 2d 244, 247 (D. Md. 1997)).   "Each element must be pled and proved with specificity" and "a deficiency in any one [element] is fatal." *Id.*

First, Defendant has failed to allege that Plaintiff's allegations as set forth in the Complaint – that Defendant illegally downloaded Plaintiff's pornographic work – have caused him severe emotional distress.   Defendant's statement that he "has been damaged in his personal and professional life" does not provide the requisite specificity sufficient to support his claim under the law.   Next, Plaintiff's filing of legitimate claims to remedy copyright infringement clearly does not constitute "extreme and outrageous conduct."   "[A] party is never liable ... where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." R*espess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 761 (D. Md. 2011) (quoting *Young v. Hartford Acc. and Indem. Co.*, 303 Md. 182, 197 (Md. Ct. App.1985)).   Underscoring that Plaintiff's suit is not outrageous are the opinions from similar cases involving Doe defendants who have

attempted to proceed anonymously, and in which courts have held that "[t]he potential embarrassment…of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 2011 WL 5161453, at *7 (D. Mass. 2011); *accord Boy Racer, Inc. v. John Does 1-34*, 2012 WL 1535703, at *4 (S.D. Fla. 2012), *citing AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, at *4 (S.D. Fla. 2012).

Lacking any merit on its face, Defendant's claim for intentional infliction of emotional distress should be dismissed.

### D. Defendant's Claim for Fraud on the Copyright Office Cannot Survive as a <u>Standalone Count and is Unsupportable</u>

Defendant's count for Fraud on the Copyright Office fails for a number of reasons. First, Defendant's count cannot stand alone as a separate count. "Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c)." *5 Patry on Copyright § 17:126*. To the extent that Defendant's claim is an attack on the validity of Plaintiff's copyrights, "[a]s with all fraud defenses, pursuant to Fed. R. Civ. P. 9(b), fraud on the Copyright Office must be pled with a particularity necessary to put the holder of the certificate on notice of the nature of the fraud claimed." *Id.* This Court has held that in order to satisfy Rule 9(b) "a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 249-50 (D. Md. 2000). *See also Yurman Design Inc. v. Chaindom Enterprises, Inc.*, 2000 Copr. L. Dec. P 28118 (S.D.N.Y. 2000) (dismissing affirmative defenses based upon the claim that "the copyright registration . . . was fraudulently obtained" where said defenses "clearly faile[ed] to satisfy the particularity requirements of Rule 9(b).")

Here, Defendant's count is conclusory and unsupportable and therefore must be dismissed.

### 1. The Fields Created Plaintiff's Business and Malibu Media Owns Its Copyrights

Defendant's count relies upon the entirely baseless claim that "Plaintiff is not the author of the films to which the Plaintiff claims a copyright." This assertion is simply untrue. Plaintiff Malibu Media was formed February 8, 2011 by Brigham Field and his wife Colette Pelissier Field. Ms. Field was a real estate agent and Mr. Field was a photographer. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. Their goal was to create erotica that is artistic and beautiful. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. They created an Internet website called X-Art.com. Mr. Field authored and produced the Copyrights-in-Suit which were created as works made for hire owned by the company. No other person or entity, other than Malibu Media, has or can claim to have an ownership interest in the copyrights.

### 2. Malibu Media Wants the Infringement to Stop

Defendant's assertion that "Plaintiff [is] not seeking to protect a valid copyright" interest is equally untrue. Malibu Media's customers can pay it a monthly recurring subscription fee of $19.95, or an annual subscription fee of $99.95 to access its entire library of HD Video content. Internet subscription sales are and have always been by *far* Malibu Media's primary source of revenue. As Malibu Media's business has grown its production value has also grown. It spends

millions of dollars a year to produce its content and run its website.  Currently, it has tens of thousands of members, but it is finding it hard to grow and maintain the memberships because so many people are finding its films for free.  The Fields have worked hard and invested millions of dollars in their business in order to produce the best quality product.

For the first 3 years (when X-Art.com was not as popular) the Fields did not have as many issues with piracy.  Now, that Malibu Media's videos are highly desirable, more people steal the videos than pay for a subscription.  Malibu Media is even getting many complaints from its members (asking why they should pay when Plaintiff's videos are available for free on the torrents).  The Fields firmly believe that they must protect Malibu Media's copyrights in order for it to survive and grow.  The Fields have gone over their options many times and concluded that the only way they can protect their business and their ability to sell subscriptions is to sue infringers.  The Fields do not want to cause financial hardship to anyone: however, they do want to deter infringement and be compensated for the intentional theft of Malibu Media's videos.

Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  Despite sending thousands of DMCA notices per week, the infringement continues.  And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  Malibu Media has _never_ authorized anyone to put its works on a torrent website.

Malibu Media does not seek to use the Court system to profit from the infringement like Defendant suggests.  As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business.  Malibu Media wants the infringement to stop.  Accordingly, the purpose of these lawsuits is to motivate people to pay for

subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of its copyrights.

Plaintiff Malibu Media is not a shell company and has not instituted this legal action "to pervert the mechanisms of the Federal Government to its own uses."  Neither were Plaintiff's copyrights obtained fraudulently.  Any claims to the contrary are simply without merit and accordingly, Defendant's count for fraud on the copyright office should be dismissed.

### III.    CONCLUSION

For the foregoing reasons, Defendant/Counter-Plaintiff's Counterclaim should be dismissed.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order dismissing Defendant/Counter-Plaintiff's Counterclaim against Plaintiff in its entirety and for such other and further relief as this Court deems just and proper.


Dated: January 14, 2013

                                                      Respectfully Submitted,


                                                      By:    */s/ Jon A. Hoppe*_____

                                                      Jon A. Hoppe, Esquire #6479
                                                      Maddox, Hoppe, Hoofnagle &
                                                      Hafey, L.L.C.
                                                      1401 Mercantile Lane #105
                                                      Largo, Maryland 20774
                                                      (301) 341-2580


### CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  */s/ Jon A. Hoppe*