**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
|  | * |  |
|  | * |  |
| *In re Malibu Media Cases* | * | Case Nos. _____ |
| . | * |  |
|  | * |  |

**ORDER**

The Court has pending before it a number of lawsuits brought by Plaintiff Malibu Media ("Malibu") alleging copyright infringement and other claims against single "John Doe" defendants ("Doe Defendants"), who are alleged to have utilized the BitTorrent file distribution network to download adult pornographic films subject to copyrights held by Malibu. The Doe Defendants have been identified in the lawsuits only by an Internet Protocol address[1] ("IP Address") assigned to a customer on a specific date by an Internet Service Provider ("ISP" or "Provider") and through which the copyrighted work was allegedly downloaded. In each of these cases, Malibu has filed a motion requesting permission to initiate discovery to identify the account subscriber ("Subscriber") associated with the IP Address on the date in question, notwithstanding the provisions of Fed. R. Civ. P. 26(d)(1), which preclude a party from seeking discovery from any source before the parties have conferred as required by Rule 26(f). Malibu contends that it must be permitted to issue a Rule 45 subpoena to Providers to identify the customer assigned the IP Address on the date in question in order to learn the identity of the person responsible for downloading the copyrighted works, and that there is no other way for it to obtain this information.

---

[1] An IP address is not really an "address" or physical "place" in the usual sense of the words, and therefore the term can be quite misleading. In fact, it is only an electronic "route" to the internet assigned by a Provider to a customer on a given date and hour to provide access to the internet. The route can be assigned to different customers on given dates or given hours. If a customer accesses the internet briefly and signs off, the IP address is assigned to another customer.

The Court is aware that in similar cases filed by plaintiffs in other jurisdictions against Doe Defendants, there have been concerns raised as to the sufficiency of the allegations of complaints because association of an IP address with a customer may be insufficient to state a claim.[2]  There have also been reports of plaintiffs undertaking abusive settlement negotiations with Doe Defendants due to the pornographic content in the copyrighted works, the potential for embarrassment, and the possibility of defendants paying settlements even though they did not download the plaintiffs' copyrighted material.[3]  As a result of these concerns, the Court designated Judges Roger W. Titus and Paul W. Grimm, jointly, to preside over a hearing to permit interested parties to be heard regarding the issues presented by the Doe Defendant cases filed by Malibu, and to recommend uniform procedures to be followed by the judges of this Court in such cases.

---

[2] *See, e.g.*, *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 237-39 (E.D.N.Y. 2012) (noting many courts' "skepticism of the use of IP addresses to identify file sharing defendants in cases involving pornographic films," adopting a magistrate judge's finding that "an IP address alone is insufficient to establish 'a reasonable likelihood [that] it will lead to the identity of defendants who could be sued,'" and observing that "[d]ue to the prevalence of wireless routers, the actual device that performed the allegedly infringing activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner.").

[3] *See, e.g.*, *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded [the copyrighted material].  The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.  Counsel stated that the true offender is often the 'teenaged son . . . or the boyfriend if it's a lady.'"); *K-Beech, Inc. v. Does 1-85*, No. 3:11cv469-JAG, at 4 (E.D. Va. Oct. 5, 2011), ECF No. 9 ("Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation. . . .  This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them.  The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

A hearing was held on March 25, 2013. Counsel for Malibu and other similarly-situated plaintiffs, counsel for various Providers, and counsel representing individual Doe Defendants in other lawsuits filed written submissions, *see, e.g.*, *Malibu Media, LLC v. John Doe*, 13-cv-517-RWT, ECF Nos. 11-13, and participated in the hearing either in person or by telephone. During the hearing, various suggestions were made regarding procedures that could be implemented to address the concerns of all parties. One suggestion was for the Court to designate a Special Master ("Master"), pursuant to Rule 53(a), to serve as an intermediary between the Providers, Subscribers, and Malibu, and to make recommendations to the Court whether sufficient facts exist to establish a plausible claim for copyright infringement against a particular Subscriber.

Following the hearing, the Court contacted Professor William Hubbard, a member of the faculty at the University of Baltimore School of Law, who teaches copyright and intellectual property law, to determine whether he would be willing to serve as a Master in the Malibu cases. Professor Hubbard expressed a willingness to do so. Accordingly, on April 23, 2013, Judges Titus and Grimm held a telephone conference call with counsel for all interested parties to discuss the appointment of Professor Hubbard as a Master, and the procedures to be followed in the Malibu cases. Thereafter, Judges Titus and Grimm considered the recommendations made during the telephone conference call, and prepared a proposed order which was circulated to interested parties for review and comment.

Having considered the comments received from interested parties, the Court **ORDERS**:

1. Professor William Hubbard is appointed as a Special Master, pursuant to Rule 53(a)(1)(C), to address pretrial matters in the Malibu cases that cannot be effectively and timely addressed by an available District or Magistrate Judge.

His responsibilities and compensation will be more specifically described in a separate order.

2. Effective upon the signing of this Order, the following procedures will govern all Malibu copyright infringement cases currently pending before this Court, or filed subsequently:

   a. Upon written request by Malibu for the identity and address of the Subscriber associated with an IP address from which the copyrighted works were allegedly downloaded, the Court will promptly issue an Order to the Provider associated with that address on the date in question to:

      i. Take reasonable steps to preserve information within its possession, custody, or control regarding the identity and address of the Subscriber ("Subscriber Information");

      ii. Provide notice to the Subscriber of the Court's Order to produce the Subscriber Information that complies with the Cable Act, 47 U.S.C. § 551; and

      iii. Promptly provide under seal to the Court and Master the Subscriber Information associated with the IP address on the date in question.

   b. Upon receipt from the Provider of the Subscriber Information, the Master shall:

      i. Provide notice to the Subscriber that a lawsuit has been filed by Malibu alleging that copyrighted works were downloaded

>   utilizing an IP address assigned by the Provider on the date in question to the Subscriber's account. The notice will request that the Subscriber provide the Master with information to enable the Master to make a preliminary recommendation whether a plausible claim for copyright infringement may be brought against the Subscriber, and whether the Subscriber Information should be provided to Malibu to enable it to file an amended complaint, if appropriate, naming the Subscriber as an individual defendant.
>
>   ii. The notice provided by the Master shall advise the Subscriber that the Subscriber Information will not be disclosed to Malibu until the Master has made a determination whether there exists a factual basis for asserting a plausible claim against the Subscriber, and that the Court has ordered the disclosure.
>
> 3. If, after the Master makes a recommendation that a factual basis exists for Malibu to assert a plausible claim for relief against a Subscriber for copyright infringement, and the Court orders the disclosure to Malibu of the Subscriber Information, any litigation against that Subscriber shall be subject to the following limitations:
>
>   a. Any amended complaint filed by Malibu that identifies a Subscriber by name will be filed under seal to protect against public disclosure of the name of the defendant until such time that the Court authorizes the unsealing of this information;

    b. Malibu is prohibited from initiating or causing to be initiated any settlement negotiations with an individual defendant, except as authorized and supervised by a United States Magistrate Judge appointed by the Court to supervise the settlement of the Malibu cases, so as to avoid any potential for coercive or otherwise unjust settlement practices by any party.

4. If the Special Master concludes that a plausible claim may not be asserted against the Subscriber, he shall file under a seal a report containing that conclusion, and the Plaintiff shall file any objection to the report within ten (10) days.