**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MALIBU MEDIA, LLC** | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *   Civil No. **PJM 12-1195** |
| | * |
| **DOE 1** | * |
| | * |
| Defendant | * |

**MEMORANDUM OPINION**

Malibu Media, LLC, has sued Doe 1 for copyright infringement. Doe, *pro se*, has filed an Answer and Counterclaims. In response, Malibu has filed a Motion to Dismiss Doe's Counterclaims. For the reasons that follow, the Motion is **GRANTED**.

**I.**

This case is one of the many copyright infringement cases brought by Plaintiff Malibu Media, LLC ("Malibu") that are pending in this District. Malibu commenced this particular action on April 19, 2012, by filing a complaint against thirty-four John Doe defendants alleged to have infringed Malibu's copyrights with respect to certain pornographic films. Malibu alleges the infringement occurred by Defendants copying and distributing the copyrighted works using a file-sharing protocol known as BitTorrent. As Judges in this District have explained, BitTorrent technology functions as follows:

> BitTorrent facilitates the sharing of large amounts of data across "Peer–to–Peer" networks on the [I]nternet. To begin, an initial user decides to share a file (known as a "seed") with a torrent network. Other users (known as "peers") within the network then connect to the seed file for downloading. Each peer downloads one piece of the seed file at a time. As a piece of the seed file is downloaded, it is typically made available to other peers to download. In other words, every downloader is also an uploader. Thus, as the process continues, peers may receive pieces of the seed file from those who have already downloaded that piece and not necessarily from the initial seeder. This system of multiple pieces of data coming

>from various peers is called a "swarm." With respect to any particular swarm, an alphanumeric representation (known as a "hash") of the shared file remains the same. A hash is essentially a "forensic digital fingerprint" that identifies a particular copy of a shared file. Through this process, each of the "peers" participating in a given "swarm" exposes his or her Internet Protocol address ("IP address") to the outside world.

*Metro Media Entm't, LLC v. Steinruck*, 912 F.Supp. 2d 344, 347 (D. Md. 2012) (citations omitted).

Typical of its practice in these cases, Malibu filed suit against thirty-four members of the same swarm, and, at the same time, filed a motion to expedite discovery, seeking leave to serve subpoenas on Internet Service Providers ("ISPs") in order to identify subscribers using their IP addresses.

On May 11, 2012, the Court severed all Defendants except Doe 1 from the case, and granted Malibu's request for early discovery. The Court further ordered that all documents containing Doe's identifying information be filed under seal. On August 24, 2012, Malibu filed a sealed Amended Complaint, alleging that the named Defendant copied and distributed three original copyrighted works.

On August 19, 2012, one Defendant Doe, *pro se*, filed an Answer and Counterclaims under seal. Doe alleges that Malibu "has engaged in a systematic course of action whereby it is using the Federal Courts in order to extort funds from individuals who use the Internet" and that Malibu is a "copyright troll" who filed suit "sole[ly] . . . to obtain the issuance of subpoenas . . . in order to determine the identify of the John Does". On or about August 14, 2012, a self-identified representative from Malibu contacted Doe and told him "he was going to be named in a lawsuit about to be filed" and "urged Defendant to settle the matter for $4,500 and stated that it was less than the cost of hiring an Intellectual Property attorney." In Defendant's view, these actions, as well as filing

suit against multiple defendants in order to "evade[] thousands of dollars of filing fees", all of which resulted in "damage[] in his personal life" constitutes abuse of process. Doe further alleges intentional infliction of emotional distress, arguing he "has been damaged in his personal and professional life." Lastly, Doe alleges a claim for "Fraud on the Copyright Office" because Malibu "was not seeking to protect a valid copyright when it made application to the United States Copyright Office", and suggesting that a shell corporation was created in order to buy and register the relevant copyrights.

Malibu responded with the pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), also filed under seal, on October 10, 2012. Upon Order of the Court, the parties subsequently filed redacted versions of the same filings, identical except for the redaction of Doe's identity. Doe filed a brief response, stating that its arguments were addressed in its counterclaims. Malibu's reply followed.

The case was stayed on February 28, 2012, pending a hearing before Judges Titus and Grimm of this District to address discovery motions filed by Malibu in what were then thirty-two open cases in the District. Certain decisions relative to the discovery issue were reached by these Judges and have been accepted by other Judges of this District to guide Malibu in its other filings in this District.

## II.

"As for the argument that the counterclaim plaintiffs have failed to state claims that entitle them to relief, '[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Harrison v. Grass*, 304 F. Supp. 2d 710, 712 (D. Md. 2004) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999)).

When a party moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must evaluate the complaint's sufficiency, viewing all well-pleaded factual allegations as true and construing them in the light most favorable to the plaintiff. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To survive a 12(b)(6) motion a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A plaintiff proceeding *pro se* is held to "less stringent standards" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even a *pro se* complaint must meet a minimum threshold of plausibility. *See O'Neil v. Ponzi*, 394 F. App'x 795, 796 (2d Cir. 2010).

### III.

#### A.  Abuse of Process.

Under Maryland law, to state a claim for abuse of process, Doe must prove "first, that the defendant willfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (1997) (citations omitted). If a party invoking civil or criminal process "is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated." *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (1984) (quoting Prosser, Law of Torts 856 (4th ed. 1971)). However, "[a] cause of action for civil abuse

of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 960 (citing *Bartlett v. Christhilf*, 14 A. 518, 522 (1888)).

In support of his abuse of process claim, Doe alleges that Malibu wrongfully filed suit against multiple defendants who ought to have been sued separately, and used the information provided pursuant to the subpoena to "intimidate and harass" Doe. Although the use of Doe's identifying information "to convey a settlement offer is clearly 'outside the scope' of the subpoena, the purpose of the settlement [offer] was not 'to attain some collateral objective.'" *Metro Media Entm't*, 912 F.Supp. 2d at 352 (quoting *Palmer Ford*, 471 A.2d at 297). There is no abuse of process where a plaintiff approaches a defendant with a settlement demand or offer prior to proceeding with litigation. *See Wallace v. Mercantile County Bank*, 514 F. Supp. 2d 776, 1793 (D. Md. 2007) (finding that attempting settlement does not support a claim for abuse of process regardless of the parties' motivations). Furthermore, the fact that multiple defendants were initially named in the Complaint along with Doe does not make out an abuse of process claim.

Moreover, Doe has failed to allege facts sufficient to show "an arrest of the person or a seizure of property of the plaintiff". *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 960. Doe summarily alleges that he was "damaged in his personal life" and fails to plead facts to show how he was so "damaged", a dubious assertion where, as here, Doe has not been named in public filings.

### B.  Intentional Infliction of Emotional Distress

In order to establish a *prima facie* case for intentional infliction of emotional distress, a plaintiff must allege and prove facts showing that: (1) the conduct was intentional or reckless; (2)

that it was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *Harris v, Jones*, 380 A.2d 611, 614 (Md. 1977). "The tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997) *aff'd*, 166 F.3d 1208 (4th Cir. 1998) (citation omitted). "In developing the tort of intentional infliction of emotional distress, whatever the relationship between the parties, recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (1986).

Doe's claim for intentional infliction of emotional distress due to Malibu's alleged attempts to force a settlement through embarrassment also fails. Doe alleges that by attempting to settle with Doe, and merely by alleging that Doe downloaded pornographic films, Malibu intends to cause Doe emotional anguish. However, filing suit for copyright infringement, and acting pursuant to lawful subpoena, do not come close to constituting "extreme and outrageous" conduct. *See, e.g.*, *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) (collecting cases in which the tort failed to clear the dispositive motion stage). Furthermore, Doe does not allege facts sufficient to make out a claim for "severe" emotional distress, as he only alleges that he has "been damaged in his personal and professional life." Defendants in copyright infringement cases such as these may not insulate themselves from liability merely by claiming embarrassment, particularly when all pleadings are filed under seal.

### C. Fraud on the Copyright Office

In support of his counterclaim of "Fraud on the Copyright Office", Doe alleges that (1) Malibu is "not the author of the films", and (2) it "was not seeking to protect a valid copyright"

because it registered the copyright solely for the purpose of bringing copyright infringement lawsuits. Doe implies, but does not properly allege, that Malibu is a "shell corporation".

"Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c)." 5 *Patry on Copyright* § 17:126. "An allegation of fraud on the Copyright Office is typically brought in an infringement action as an affirmative defense to the enforcement of a registered copyright certificate." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000). In this case, Doe alleges a fraud on the Copyright Office not as a defense to the enforcement of a copyright, but as a cause of action seeking declaratory relief. "A claim alleging fraud on the Copyright Office is only available where the registrant is alleged to have made false representations of *fact* with the requisite intent to defraud." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 12-CV-00954-AW, 2013 WL 2477260 at *14 (D. Md. June 10, 2013) (emphasis in original).

Doe's counterclaim fails to specify facts to plausibly state a claim for fraud on the Copyright Office and is dismissed.

### D. Settlement Concerns

The Court is aware that in similar cases filed by plaintiffs in other jurisdictions against Doe Defendants, there have been reports of plaintiffs undertaking abusive settlement negotiations with Doe Defendants given the pornographic content of the allegedly copyrighted works, the potential for embarrassment of defendants, and the pressure on them to enter into settlements even though they may not have downloaded the plaintiff's copyrighted material.[1]

---

[1] *See, e.g.*, *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded [the copyrighted material]. The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared

Due to these concerns, the Judges of this District have determined to impose certain restrictions with respect to settlement negotiations in these cases. The Court will impose such limitations in the accompanying Order.

**IV.**

For the foregoing reasons, the Court **GRANTS** the Plaintiff's Motion to Dismiss Defendant/Counter-Plaintiff Doe 1's Counterclaim [Dkt. 28] (Paper No. 29), and the sealed version of the same (Paper No. 22).

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**October 10, 2013**                                          **UNITED STATES DISTRICT JUDGE**

---

copyrighted material. Counsel stated that the true offender is often the 'teenaged son . . . or the boyfriend if it's a lady.'"); *K-Beech, Inc. v. Does 1-85*, No. 3:11cv469-JAG, at 4 (E.D. Va. Oct. 5, 2011), ECF No. 9 ("Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation. . . . This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").